IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
PAUL G. ROGERS FEDERAL BUILDING & US COURTHOUSE
701 CLEMATIS STREET
COURT ROOM #4, CHAMBERS 316
WEST PALM BEACH, FL 33401

FILED BY ___cbs___ D.C.

MAR 04 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

UNITED STATES OF AMERICA
Plaintiff

v.                                                    Case No. 11cr80106

Hermann J. Diehl
Defendant

MOTION REQUESTING A JUDICIAL RECOMMENDATION
CONCERNING LENGTH OF RESIDENTIAL REENTRY CENTER PLACEMENT

Dear Honorable Judge Kenneth A. Marra,

COMES NOW, the defendant, Hermann J. Diehl, movant PRO SE, before this Honorable Court, respectfully requesting that you please recommend the Bureau of Prisons provide me with additional time in the RRC/Halfway house pursuant to the Second Chance Act of 2007 so that I can properly reacclimate back into society, have an opportunity to rebuild my life, and go on to once more be a productive member of my community.

You sentenced me on 10-10-2014 to a term of 108 months of imprisonment, to be followed by 2 years of supervised release for the offense of USC 18: 1349 conspiracy to commit mail fraud(ct.1) ,18: 1341 mail fraud (ct.2 &3), 18: 1956(H) conspiracy to commit money laundering (ct. 79), 18: 1956(A)(1) money laundering (ct. 80-82) as defined in Docket No. 1180106-CR-MARRA-39. I am currently serving out the remainder of my sentence at the minimum security Federal Prison Camp located in Yazoo City Mississippi.

I have the lowest custody classification, Judge Marra, and have demonstrated exemplary behavior, have been a role-model inmate, and have successfully completed numerous ameliorating courses including the following classes for reentry: victim impact, your money your goals, parenting, small business, understanding credit, job skills, business ettiquette,

entrepreneur opportunites, marketing, and the non-residential drug abuse program. Additionally, I have attended the release orientation program conducted by the AUSA and Federal Probation Department that cover topics such as: transitioning to the community, psychology, reintegrating with your family, managing your finances, applying for a job, living in the community-RRC's and home confinement, succeeding with US Probation, and contending with culture shock. I have availed myself of every opportunity available here at the Federal Prison Camp Yazoo City to be reformed and rejoin law abiding society. I have demonstrated extraordinary efforts at rehabilitation, and am an excellent candidate for the Second Chance Act. During my incarceration, I have displayed exemplary compliance with institutional disciplinary regulations and have demonstrated excellent conduct. I have been a model inmate for the past 4 years, maintaining a flawless disciplinary record. I have consistently earned positive performance evaluations for my institutional job assignment which is currently an educational clerk. I have maintained my court-ordered financial obligations and am in good standing with the inmate financial responsibility program. Every week I participate in 12 step, self help , self improvement classes here at the camp such as Alcoholics and Narcotics anonymous. I am a non-violent, non-dangerous, non-repetitive, white-collar offender who made very poor business decisions. I have accepted full responsibility for my involvement in the offense that led to me being here, and have expressed tremendous remorse. I have served approximately 45 percent of my sentence and have earned significant good-time credits which will be applied via the First Step Act which was signed into law by President Trump on December 21, 2018.

I am currently scheduled for release on 11-6-2022, which will be changed and modified per the First Step Act, however, under the Second Chance Act of 2007, which President Trump reauthorized as part of the First Step Act, I am eligible for up to one year of release, 6 months in an RRC/halfway house, and an additional 6 months of home confinement. I meet all criteria and eligibility for this program. I will be eligible for the Second Chance Act on 11-6-2021, and even sooner when given credit via the First Step Act. The days that the BOP will recommend will not be sufficient for me to reestablish myself and be well-grounded prior

to being sent back into the community. The Second Chance Act of 2007 was passed by Congress to assist inmates such as myself, and I meet all eligibility requirements for the program. Typically, the BOP provides up to a maximum of 6 months or less in an RRC/halfway house in order to help you reacclimate back into the community, however, the Second Chance Act of 2007 provides for an additional 6 months of halfway house in order to assist you in rebuilding your life and getting back on your feet. I have been incarcerated since 1-5-2015, and during this time, I have completely turned my life around and done everything possible to ensure that I will never again be at risk for recidivism. Your recommendation to grant me the final 12 months of my sentence in the Residential Reentry Center via the Second Chance Act will enable me to make a reasonable adjustment back into to the community.

I have gone to great lengths to ensure that I am rehabilitated while in custody, including addressing behavioral cognitive issues. I will prove to you, Your Honor, that I am not the individual that stood before you back on October 10, 2014.

Courts may order the BOP to consider an inmates request Rodriguez, 541 F.3D at 1187, and district courts may issue non-binding recommendations that the BOP may grant such a request US v. Ceballos, 671 F.3D 852,855-56 (9th Cir. 2011); accord US v. Ellis, 2017 WL 4641489, at *1 (N.D. Cal. Oct. 17, 2017). In no way should my motion be interpreted or construed as a Habeas petition. I do not seek Habeas relief, rather, I seek only the non-binding recommendation permitted under 18 USC § 3621(B)(4) permitting the BOP to consider any statement by the court that imposed the sentence... recommending a type of penal or correctional facility as appropriate. As several Courts have recognized, a sentencing court may make a recommendation that a prisoner may serve a term of imprisonment in an RRC US v. Collins, 2018 WL 1157508, at *1 (E.D. Mar. 5, 2018); See also US v. Sutherland, 2018 WL 3085169, at *2 (D. ME. Jun. 22, 2018)(listing courts that have issued orders recommending release into residential reentry programs. An inmates institutional conduct and programming are also an important part of this assessment process, and are considered to determine whether additional RRC is warranted as an incentive for positive behavior under 42 USC § 17541.

Moreover, § 3621 permits the BOP to consider any statement by the court that imposed the sentence 18 USC §3621(B)(4) not the court that happens to sit in the venue in which the BOP placed the defendant. As this Court sentenced me, it may thus choose to issue this type of recommendation.

I am not bringing a Bivens action, I seek only a non-binding recommendation under § 3621(b)(4). My request is for a statement by the court that imposed the sentence.

By providing me with the additional time in an Residential Reentry Center and home confinement, it will allow me to work and be gainfully employed, save money, attend classes and counseling, pay my restitution as ordered by the court, pay taxes, help support my children, and help me to better integrate back into the community. I am going to need this time in order to rebuild my life from the ground up and pursue a different career.

I am enclosing several exhibits for your consideration including: US v. Zubair Ahmed, US v. Otero, US v. Stamps, US v. Derevous M. Beneford, and US V. Timothy Gilliam. These cases in particular, closely mirror my own issues and will provide to you an example as to why this additional time that I am seeking in an RRC or on home confinement will be so very beneficial

I pose no danger, threat, or risk to anyone in the community, I have the lowest custody level possible, and am confined at a Federal Prison Honor Camp where there is no perimeter fence, walls, bars, or razor wire. I will be law-abiding and adhere to all rules and regulations. I will not be at risk for recidivism. I will attend any and all classes as required by the Probation Department. Your recommendation, Judge Marra, will be very beneficial in helping me start on a new path. I am enclosing to you a copy of my educational transcript and current time computation sheet from the BOP. Your thoughtful consideration of my request is greatly appreciated.

Thank you for your time and attention to this matter.


Respectfully Submitted,

Herman J. Diehl #03847-104
FPC Yazoo City
PO BOX 5000
Yazoo City, MS 39194

```
YAZDN  540*23 *              SENTENCE MONITORING          *    12-24-2018
PAGE 001        *            COMPUTATION DATA             *    15:18:22
                            AS OF 12-24-2018
```

REGNO..: 03847-104 NAME: DIEHL, HERMANN J


```
FBI NO...........: 378189WD8          DATE OF BIRTH: 07-04-1969  AGE: 49
ARS1.............: YAZ/A-DES
UNIT.............: GOLF 1               QUARTERS.....: G01-045L
DETAINERS........: NO                   NOTIFICATIONS: NO
```

HOME DETENTION ELIGIBILITY DATE: 05-06-2022

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  11-06-2022 VIA GCT REL


```
---------------------CURRENT JUDGMENT/WARRANT NO: 010 ----------------------
```

```
COURT OF JURISDICTION...........: FLORIDA, SOUTHERN DISTRICT
DOCKET NUMBER...................: 11-80106-CR-MARRA-39
JUDGE...........................: MARRA
DATE SENTENCED/PROBATION IMPOSED: 10-10-2014
DATE COMMITTED..................: 01-05-2015
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO
```

```
                 FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.: $700.00        $00.00          $00.00       $00.00
```

RESTITUTION...: PROPERTY:  NO  SERVICES:  NO      AMOUNT:  $1,685,345.01

```
---------------------CURRENT OBLIGATION NO: 010 ----------------------
OFFENSE CODE....:  548
OFF/CHG: 18:1349 CONSPIRACY TO COMMIT MAIL FRAUD(CT1), 18:1341 MAIL
         FRAUD(CT2,3), 18:1956(H) CONSPIRACY TO COMMIT MONEY LAUNDERING
         (CT79), 18:1956(A)(1) MONEY LAUNDERING (CT80-82)
```

```
 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:  108 MONTHS
 TERM OF SUPERVISION............:    2 YEARS
 DATE OF OFFENSE................: 11-05-2008
```

G0002      MORE PAGES TO FOLLOW . . .

```
YAZDN  540*23 *                SENTENCE MONITORING          *      12-24-2018
PAGE 002 OF 002 *              COMPUTATION DATA             *      15:18:22
                               AS OF 12-24-2018


     REGNO..: 03847-104 NAME: DIEHL, HERMANN J


     ------------------------CURRENT COMPUTATION NO: 010 ------------------------

     COMPUTATION 010 WAS LAST UPDATED ON 02-27-2015 AT DSC AUTOMATICALLY
     COMPUTATION CERTIFIED ON 02-27-2015 BY DESIG/SENTENCE COMPUTATION CTR

     THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
     CURRENT COMPUTATION 010: 010 010


     DATE COMPUTATION BEGAN..........: 01-05-2015
     TOTAL TERM IN EFFECT............:   108 MONTHS
     TOTAL TERM IN EFFECT CONVERTED..:     9 YEARS
     EARLIEST DATE OF OFFENSE........: 11-05-2008

     JAIL CREDIT.....................:    FROM DATE      THRU DATE
                                         08-22-2013     08-22-2013

     TOTAL PRIOR CREDIT TIME.........: 1
     TOTAL INOPERATIVE TIME..........: 0
     TOTAL GCT EARNED AND PROJECTED..: 423
     TOTAL GCT EARNED................: 162
     STATUTORY RELEASE DATE PROJECTED: 11-06-2022
     EXPIRATION FULL TERM DATE.......: 01-03-2024
     TIME SERVED.....................:     3 YEARS      11 MONTHS     21 DAYS
     PERCENTAGE OF FULL TERM SERVED..:  44.1


     PROJECTED SATISFACTION DATE.....: 11-06-2022
     PROJECTED SATISFACTION METHOD...: GCT REL

     REMARKS.......: V/S ON 01-05-2015.  COMP COMPLT 02-27-2015 L/JS.
```

```
     G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

```
  YAZK9              *      INMATE EDUCATION DATA       *       02-26-2019
  PAGE 001           *            TRANSCRIPT            *       09:24:13


  REGISTER NO: 03847-104    NAME..: DIEHL              FUNC: DIS
  FORMAT.....: TRANSCRIPT    RSP OF: YAZ-YAZOO CITY FCI


  ------------------------- EDUCATION INFORMATION -------------------------
  FACL ASSIGNMENT DESCRIPTION                  START DATE/TIME STOP DATE/TIME
  YAZ  ESL HAS    ENGLISH PROFICIENT           01-22-2015 1008 CURRENT
  YAZ  GED HAS    COMPLETED GED OR HS DIPLOMA  01-22-2015 1008 CURRENT


  -------------------------- EDUCATION COURSES --------------------------
  SUB-FACL     DESCRIPTION                  START DATE  STOP DATE EVNT AC LV  HRS
  YAZ SCP      RPP1 NONRESID DRUG ABUSE TREAT 12-28-2018 CURRENT
  YAZ SCP      INTRODUCTION TO TOASTMASTERS  02-15-2017 CURRENT
  YAZ SCP      PARENTING CAMP-WED 1230-230    11-20-2018 02-06-2019  P  C  P   16
  YAZ SCP      RPP YOUR MONEY YOUR GOALS      11-29-2018 01-17-2019  P  C  P    8
  YAZ SCP      RPP2 JOB SKILLS CAMP           10-09-2018 12-06-2018  P  C  P   16
  YAZ SCP      LANGUAGE II CAMP               07-20-2018 09-18-2018  P  C  P   16
  YAZ SCP      POLITICAL SCIENCE-CAMP         05-17-2018 07-18-2018  P  C  P   16
  YAZ SCP      LANGUAGE I CAMP                05-17-2018 07-17-2018  P  C  P   16
  YAZ SCP      HEALTH/NUTRITION-CAMP          03-13-2018 05-15-2018  P  C  P   16


  G0002      -- MORE PAGES TO FOLLOW . . .
```

```
  YAZK9            *       INMATE EDUCATION DATA      *      02-26-2019
  PAGE 002         *           TRANSCRIPT            *      09:24:13


  REGISTER NO: 03847-104    NAME..: DIEHL              FUNC: DIS
  FORMAT.....: TRANSCRIPT    RSP OF: YAZ-YAZOO CITY FCI


  ---------------------- EDUCATION COURSES -----------------------
  SUB-FACL    DESCRIPTION                START DATE  STOP DATE  EVNT AC LV  HRS
```

| SUB-FACL | DESCRIPTION | START DATE | STOP DATE | EVNT | AC | LV | HRS |
|---|---|---|---|---|---|---|---|
| YAZ SCP | AMERICAN HISTORY-CAMP | 12-28-2017 | 03-09-2018 | P | C | P | 16 |
| YAZ SCP | WORLD GEOGRAPHY-CAMP | 10-12-2017 | 12-08-2017 | P | C | P | 16 |
| YAZ SCP | YOGA-CAMP | 01-05-2017 | 03-11-2017 | P | C | P | 2 |
| YAZ SCP | UNDERSTANDING CREDIT-CAMP | 12-12-2016 | 01-31-2017 | P | C | P | 16 |
| YAZ SCP | RPP2 BUSINESS ETIQUETTE | 12-12-2016 | 01-10-2017 | P | C | P | 8 |
| YAZ SCP | RPP2 JOB SKILLS CAMP | 11-29-2016 | 12-08-2016 | P | C | P | 8 |
| YAZ SCP | RPP3 ENTREPRENEUR OPPORTUN C | 10-18-2016 | 11-29-2016 | P | C | P | 8 |
| YAZ SCP | RPP2 JOB INTERVIEW CAMP | 11-29-2016 | 11-29-2016 | P | C | P | 8 |
| YAZ SCP | RECREATION HEALTH FAIR | 09-16-2016 | 10-07-2016 | P | C | P | 1 |
| YAZ SCP | AMERICAN HISTORY-CAMP | 08-05-2016 | 10-04-2016 | P | C | P | 16 |
| YAZ SCP | INTRODUCTION TO TOASTMASTERS | 06-14-2016 | 06-14-2016 | P | C | P | 3 |
| YAZ SCP | EFFECTIVE PLANNING-CAMP | 03-21-2016 | 05-03-2016 | P | C | P | 8 |
| YAZ SCP | BELIEVE AND ACHIEVE CAMP | 01-12-2016 | 03-25-2016 | P | C | P | 16 |
| YAZ SCP | YOGA-CAMP | 01-14-2016 | 03-18-2016 | P | C | P | 8 |

```
  G0002      MORE PAGES TO FOLLOW . . .
```

```
   YAZK9          *        INMATE EDUCATION DATA       *      02-26-2019
PAGE 003 OF 003 *               TRANSCRIPT            *      09:24:13


REGISTER NO:  03847-104     NAME..: DIEHL                  FUNC:  DIS
FORMAT.....:  TRANSCRIPT    RSP OF: YAZ-YAZOO CITY FCI


------------------------- EDUCATION COURSES -------------------------
SUB-FACL     DESCRIPTION              START DATE  STOP DATE EVNT AC LV  HRS
YAZ SCP      TUTOR TRAINING-CAMP      12-31-2015 12-31-2015  P  C  P    2
YAZ SCP      POLITICAL SCIENCE-CAMP   08-27-2015 10-23-2015  P  C  P   16
YAZ SCP      RPP2 BUSINESS ETIQUETTE  09-21-2015 10-23-2015  P  C  P    8
YAZ SCP      MARKETING- CAMP          06-18-2015 08-21-2015  P  C  P   16
YAZ SCP      INFO FAIR (EDUCATION)    07-16-2015 07-16-2015  P  C  P    4
YAZ SCP      WORLD GEOGRAPHY-CAMP     03-09-2015 04-27-2015  P  C  P   16
YAZ SCP      ABDOMINALS I-CAMP        02-21-2015 04-25-2015  P  C  P    4




G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No: 6:12-cr-100-Orl-37TBS

TERRENCE JERMAINE NEAL

_____

## ORDER

This cause is before the Court upon *pro se* Defendant Terrence Jermaine Neal's

Motion Requesting Judicial Recommendation. (Doc. 33 ("**Motion**").) Upon review, the

Motion is due to be granted.

### I.     BACKGROUND

On June 25, 2012, Defendant entered a guilty plea to Count One of the Indictment,

charging Defendant with conspiracy to distribute and possession with intent to distribute

cocaine hydrochloride. (Doc. 55, p. 1.) On September 21, 2012, U.S. District Judge G.

Kendall Sharp sentenced Defendant to, *inter alia*, a prison term of seventy months. (Doc.

116.) The Government appealed (Doc. 133), and the U.S. Court of Appeals for the

Eleventh Circuit vacated the sentence and remanded for resentencing (Doc. 177). The

Undersigned then sentenced Defendant on October 1, 2013 to, *inter alia*, a prison term of

120 months. (Doc. 186.) Now, Defendant seeks a recommendation from this Court to the

Bureau of Prisons ("**BOP**") that he serve additional time in a Residential Reentry Center

("**RRC**") to better prepare him to return to society. (Doc. 233.)

## II.   LEGAL STANDARD

Once a sentence has been imposed, the BOP assumes legal authority over the prisoner and only the BOP can designate the place of a prisoner's employment. *See* 18 U.S.C. § 3621(b). The BOP is given wide discretion in making its housing determinations. *See United States v. Sonny Austin Ramedo*, 705 F. App'x 839, 840–41 (11th Cir. 2017)[1] (explaining that "the BOP is afforded wide discretion in classifying and housing prisoners" (citations omitted)). However, if possible, the BOP should:

> ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1).

In making placement decisions, the BOP is guided by a number of factors, including the sentencing court's recommendation on "a type of penal or correctional facility." 18 U.S.C. § 3621(b)(4)(B). Ultimately, any such recommendation has "no binding effect." 18 U.S.C. § 3621(b).

## III.   ANALYSIS

Here, Defendant requests additional time in RRC to "allow [him] to be gainfully employed, earn and save money, attend classes and counseling for substance abuse, pay taxes, and help [him] get back on [his] feet." (Doc. 233, p. 4.) The Court finds Defendant's

---

[1] While unpublished opinions are not binding precedent, they may be considered as persuasive authority. *See* 11th Cir. R. 36-2; *see also United States v. Almedina*, 686 F.3d 1312, 1316 n.1 (11th Cir. 2012).

argument compelling. As noted at the time of sentencing, Defendant had a total offense level of 25 and a criminal history category II, which would have resulted in a range of imprisonment of 63 to 79 months. (Doc. 193, p. 5.) However, in light of the 21 U.S.C. § 851 enhancement, Defendant received the minimum mandatory term of imprisonment of 120 months. (*Id.*) Thus, based on that alone, the Court finds a recommendation for additional time in RRC warranted. Yet even more compelling is Defendant's exemplary record in custody. Among his accomplishments, Defendant obtained his General Educational Development degree and attended self-help and substance abuse classes. (Doc. 233, pp. 1–3.) So the Court finds the Motion due to be granted.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant Terrence Jermaine Neal's Motion Requesting Judicial Recommendation Concerning Length of RRC/Halfway House Placement. (Doc. 233) is **GRANTED**. The Court recommends that BOP place Defendant in an appropriate Residential Reentry Center for the maximum time for which he is eligible, not to exceed twelve months.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on January 10, 2019.


ROY B. DALTON JR.
United States District Judge

United States of America, Plaintiff, v. Zubair Ahmed (B.O.P. Inmate 19303-424), Defendant,
UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO, WESTERN
DIVISION
2017 U.S. Dist. LEXIS 185276
Case No.: 1:07CR00647
November 8, 2017, Filed

**Editorial Information: Prior History**

United States v. Zubair Ahmed, 587 F. Supp. 2d 853, 2008 U.S. Dist. LEXIS 106840 (N.D. Ohio, Nov. 25, 2008)

**Counsel**         For United States of America, Plaintiff: Thomas E. Getz, LEAD ATTORNEY, Former Assistant U.S. Attorney, Northern District of Ohio; David I. Miller, Jerome J. Teresinski, U.S. Department of Justice - Counter Terrorism Section, Washington, DC; Gregg N. Sofer, Office of the U.S. Attorney - Austin, Austin, TX; Jolie F. Zimmerman, U.S. Department of Justice - Counterterrorism Section, Washington, DC; Justin E. Herdman, Matthew W. Shepherd, Office of the U.S. Attorney - Cleveland, Northern District of Ohio, Cleveland, OH.

**Judges:** James G. Carr, Senior United States District Judge.

**Opinion**

**Opinion by:**         James G. Carr

**Opinion**

**ORDER**

Defendant pleaded guilty to and was convicted of conspiring to provide material support to terrorists in violation of 18 U.S.C. § 2339A. His base offense level was 43 (deemed 52 for sentencing purposes). Defendant had never been arrested before this offense, but received a criminal history category of IV due to the nature of the crime. This resulted in a Guideline Range of 360 months to life imprisonment.

I sentenced defendant on June 10, 2010, to a term of 120 months, with three years supervised release to follow. The defendant's "out date" is August 17, 2018.

He has filed a *pro se* "Motion Requesting a Judicial Recommendation Concerning Length of RRC/Halfway House Placement." (Doc. 207). The government opposes the motion. (Doc. 208).1

For the reasons that follow, I grant the motion and recommend that the Bureau of Prisons *forthwith* arrange for the defendant's release to a halfway house in his hometown, Chicago.

**Discussion**

Title18 U.S.C. § 3624(c)(1) authorizes the Bureau's Director to assign an inmate during the last months of his term (not to exceed twelve months) to a halfway house:

The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner

1yfcases                                              1

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

Halfway house placement is "a mechanism to reduce recidivism." (Doc. 207, Ex. 2 (Bureau of Prisons Director's Memorandum for Chief Executive Officers: "Revised Guidance for Residential Reentry Center (RRC) Placements")). The Second Chance Act instructs that an inmate's placement should be "of sufficient duration to provide the greatest likelihood of successful reintegration in the community." 18 U.S.C. § 3624(c)(6)(C). Although the Director is ultimately responsible for defendant's placement, the Bureau must consider "any statement" I make "recommending a type of penal or correctional facility as appropriate." *See* 18 U.S.C. § 3621(b)(4)(B).

The government's principal contention appears to be that the defendant, in light of the nature of his conviction, deserves no leniency and should not return to his home community until the latest date (usually six months prior to expiration of the term) as of which the Bureau would place him in the halfway house to prepare for release from custody.

I disagree with the government for several reasons.

First: the government says I do not know what the defendant's conduct has been in prison. So saying, the government ignores the courses that defendant has taken on subjects as diverse as Aquiculture and Organic Farming to Computer Applications, Financial Literacy, and Technology 101 to Stress Management and Decision-Making to College Correspondence Courses and Spanish.

More to the point, the government offers no evidence as to the defendant's conduct, good or bad, while in custody. But the government certainly could have found out what his record as an inmate was. Its silence in that regard is telling.

Second: with an "out date" one month short of two years before his imposed term ends on July 12, 2020, it is readily apparent that the defendant has substantial good time credit.2

That fact, like the government's silence, is telling. Indeed, it suggests that the professed ignorance about the defendant's conduct in prison is not just telling; it appears disingenuous.

Admittedly, the defendant's crime was serious. I took that fact expressly into account at sentencing. I suggest, though, that now is not the time to give, as the government does, too much heed to that factor.

What really matters at this point is assessment of what, if any risk, the defendant poses to the community. Given his apparent rehabilitation, as evidenced by his good time credit and educational pursuits, further imprisonment is simply punitive.

Punishment for punishment's sake is not a § 3553(a) factor.

Nor should or could it be in a penal system in the service of the Rule of Law. Demanding that the defendant remain in prison until the last grain of sand in the hour glass has run down, the government, it seems to me, has no real motivation other than punishment.

To be sure, the government professes concern about community safety. While that is, of course, a core concern, the government offers nothing to substantiate its apprehension.

The defendant will return to Chicago at some point. Is there any reason to believe that hastening his return by few months (during which he'll still be confined under Bureau control) endangers anyone? The government offers, and I see none.

1yfcases                                    2

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Instead, I believe that an early start on reentry within the halfway house setting can enhance the likelihood of an uneventful period of supervised release and long-term law-abiding behavior.

When he returns home, defendant will do so tarred with the indelible brush marks of one who wanted to provide substantial assistance to overseas terrorists. That stain will never wash off or be wiped away.

For someone so convicted, reentry will be especially difficult.

That being so, it makes better sense - and better serves the community - to allow the defendant to enter a halfway house now, rather than wait until the usual six months before the end of his term.

Delay, on the other hand, can serve no useful purpose, for the defendant or his community.

**Conclusion**

In light of the foregoing, I grant the defendant's motion and recommend that the Bureau of Prisons promptly end his prison confinement and transfer him to a Residential Reentry Center to begin the process of reentry into his home community.

It is, therefore, hereby

ORDERED THAT:

1. The defendant's Motion Requesting a Judicial Recommendation Concerning Length of RRC/Halfway House Placement (Doc. 207), be, and the same hereby is granted;

2. The United States Attorney shall on receipt of this Order, immediately forward it to the appropriate Bureau of Prisons officials responsible for deciding when to transfer prison inmates to halfway house custody; and

3. The Clerk shall serve a copy of this Order on the Warden of the **Seagoville** (Texas) Federal Correctional Institution and the defendant's Case Manager at that institution.

So ordered.

/s/ James G. Carr

Sr. U.S. District Judge

**Footnotes**

1

The defendant filed his motion on July 10, 2017; the government its response on July 18, 2017. Lest there be any doubt, the delay in deciding the motion was entirely inadvertent, due to my own oversight as to its pendency. The delay was by no means whatsoever intentional. Thus, no reader should infer that my tardiness in preparing and filing this order indicates any hesitancy on my part to grant the defendant's request. I regret my delay in addressing the defendant's motion; the consequences of that delay are, unfortunately, incurable.

2

Defendant can earn 42 or 54 days of good time credit per year, depending on the progress he makes toward earning a GED or high school diploma. *See* 28 C.F.R. § 523.20(c). With an "out date" twenty-three months short of the end date of the imposed term, I can infer that defendant may well

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

have earned all the good time credit available to him.

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

V.                                                         NO. 1:14CR00081-004

TIMOTHY GILLIAM                                            DEFENDANT

### ORDER

This matter comes before the Court on Defendant's *Motion Requesting a Judicial Recommendation Concerning Length of RRC/Halfway House Placement* [142] filed on August 27, 2018.

### FACTS AND PROCEDURAL POSTURE

Timothy Gilliam pleaded guilty to one count of conspiracy to possess with intent to distribute cocaine hydrochloride and cocaine base. This Court sentenced Mr. Gilliam to sixty months of imprisonment. He is currently imprisoned in Yazoo City, Mississippi, his release date is September 18, 2019.

Mr. Gilliam has distinguished himself during his present incarceration by obtaining instruction in a variety of educational courses including, but not limited to, such offerings as American History, Spanish I, Dress for Success, Business Etiquette, AIDS Awareness and other instructive presentations to help him re-enter society. This Court frankly is quite impressed with Mr. Gilliam's efforts to enlarge his life interests and broaden his opportunities.

Mr. Gilliam now presents his *Motion Requesting a Judicial Recommendation Concerning Length of RRC/Halfway House Placement* [142]. He is requesting that instead of the usual six-month placement in a residential reentry center (RRC), set to begin in March 2019, that he considered for a longer placement period beginning as early as September of 2018.

1

The Court is sympathetic to Mr. Gilliam's efforts. However, the Court is restricted by the rule of law, and in all instances must examine the appropriate legal authorities before ruling. The Court's inclinations in this case are constrained by 18 U.S.C. § 3621 which inter alia, provides that when deciding appropriate placement for a prisoner, considerations include the resources of the facility contemplated, the nature and circumstances of the offense, the history and characteristics of the prisoner, and any statement by the court that imposed the sentence.

The Court notes that Mr. Gilliam has taken several steps to ensure a smooth reintegration into society, has excelled in classes dealing with various subjects related to reentry, and has no charges of crimes of violence. As best this Court can determine, the first available bed space at the RRC in Tupelo, Mississippi is December 28, 2018.

## CONCLUSION

After due consideration, this Court finds that Mr. Gilliam would benefit from a residential reentry center. For these reasons the *Motion Requesting a Judicial Recommendation Concerning Length of RRC/Halfway House Placement* [142] is hereby **GRANTED,** with placement to begin no later than December 28, 2018.

SO ORDERED, this the 17th day of September, 2018.


/s/ MICHAEL P. MILLS
UNITED STATES DISTRICT JUDGE NORTHERN
DISTRICT OF MISSISSIPPI

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 3:14 CR 159–2 |
| | ) | Hon. Marvin E. Aspen |
| DEREVOUS M. BENFORD, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

MARVIN E. ASPEN, District Judge:

We have reviewed Defendant Derevous M. Benford's *pro se* motion requesting a recommendation for placement in a halfway house. (Mot. (Dkt. No. 159).) We have also reviewed defense counsel's supplemental filing in support as well as the government's response. (Dkt. Nos. 162–63.) For the reasons set forth below, we grant Defendant's motion and recommend to the Bureau of Prisons ("BOP") that Defendant be transferred to a local halfway house twelve months prior to completion of his sentence.

Defendant pled guilty to and was convicted of (1) conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 846, and (2) distribution and possession with intent to distribute cocaine within 1,000 feet of a school in violation of 21 U.S.C. § 860. (Dkt. No. 157.) Defendant was sentenced to a term of imprisonment of 85 months as to each count, to run concurrent with each other, followed by six years supervised release. Defendant states he is scheduled for release on December 15, 2020. (Mot. at 1; *see also* Dkt. No. 162 at 2–3.) Defendant's motion requests a judicial recommendation that BOP provide him with additional time in a halfway house before the

expiration of his term of imprisonment.  (*Id.*)  Defense counsel supports his request.

(Dkt. No. 162.)  The government takes no position.  (Dkt. No. 163.)

Under the Second Chance Act, 18 U.S.C. § 3624(c)(1), the Director of the BOP must "to

the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of

the final months of that term (not to exceed 12 months), under conditions that will afford that

prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the

community," including placement in a community correctional facility.  "Pursuant to the

administrative regulations accompanying the Second Chance Act, the decision to place an inmate

in pre-release community confinement is discretionary and will be determined on an individual

basis according to the factors in 18 U.S.C. § 3621(b)."  *Lovett v. Hogsten*, No. 09–5605,

2009 WL 5851205, at *1 (6th Cir. Dec. 29, 2009) (quotations omitted).  One of the factors BOP

may consider in designating the place of imprisonment is "any statement by the court that

imposed the sentence . . . recommending a type of penal or correctional facility as appropriate."

18 U.S.C. § 3621(b)(4)(B).  Placement in a community correctional facility should be "of

sufficient duration to provide the greatest likelihood of successful reintegration into the

community."  18 U.S.C. § 3624(c)(6)(C).

Defense counsel represents Defendant is currently serving his sentence at the minimum

security camp at Yazoo City, Mississippi; he has earned all of the good time credits to which he

was entitled; and he has been working to improve himself, including taking classes, completing

programs, and working hard at his job assignment.  (Dkt. No. 162 at 3; *see also* Mot. at 1.)

Defendant demonstrates he has taken several classes to develop skills for re-entry, and he has

enrolled in numerous self-help, self-improvement, and substance abuse programs and seminars.

(Mot. at 1.)  Defendant argues placement in a community correctional facility, halfway house, or

home confinement will allow him to "work, save money, attend classes & counseling for substance abuse, pay taxes, help support [his] family and help [him] to better integrate back into the community." (*Id.* at 2.)

Considering Defendant's representations, his counsel's arguments, and the purposes of § 3624(c), we hereby grant Defendant's motion. Accordingly, pursuant to § 3621(c)(6)(C), we recommend to BOP that Defendant be transferred to a community corrections facility or halfway house twelve months prior to the completion date of his sentence. It is so ordered.

Marvin E. Aspen
United States District Judge

Dated: September 25, 2018
Chicago, Illinois

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                          CRIMINAL NO. 3:15-CR-102-DPJ-FKB

CEDRIC STAMPS

ORDER

This criminal case is before the Court on Defendant Cedric Stamps's Motion Requesting

a Judicial Recommendation Concerning Length of RRC/Halfway House Placement [34].  The

Government has not responded, and the time to do so under Local Rules has now expired.  *See*

L.U. Crim. R. 47(C)(1).

On April 22, 2016, Stamps pleaded guilty to one count of possession with intent to

distribute 5 grams or more of actual methamphetamine.  The Court subsequently sentenced

Stamps to a sixty-month term of imprisonment.  Stamps is currently incarcerated at the Federal

Correctional Complex in Yazoo City, Mississippi, with a scheduled release date of October 3,

2019.  Mot. [34] at 2.

As is its custom, at Stamps's sentencing hearing, the Court encouraged him to take

advantage of the educational and training opportunities offered by the Bureau of Prisons during

his incarceration.  And it appears that Stamps has done so, having completed the Residential

Drug Abuse Program, a banking tutorial, a course on dealing with stress, and classes on

keyboarding, stocks, dressing for success, and AIDS awareness.  Stamps also states that he is a

weekly participant in several 12-step groups and has attended the following release-orientation

programs:  transitioning to the community, adjusting your attitude, psychology, reintegrating

with your family, managing your finances, and applying for a job. The Court commends Stamps for his commitment to preparing for reentry.

Stamps now asks the Court to recommend that BOP consider him for immediate release to a residential-reentry center under 18 U.S.C. § 3624(c). *See* 18 U.S.C. § 3621(b)(4) (explaining that BOP should consider "any statement by the court that imposed the sentence . . . recommending a type of penal or correctional facility as appropriate" in determining a suitable facility to designate for a prisoner's confinement).

The Court cannot dictate Stamps's BOP placement, but it can make a recommendation. The Court also recognizes that the BOP is in a better position to fully evaluate how he has conducted himself and the placement that would be appropriate. But in view of Stamps's prison record and his efforts to prepare himself for reentry into society, Stamps's Motion [34] is granted. The Court recommends that the BOP consider Stamps for immediate release to a residential-reentry center, subject to bed-space availability.

**SO ORDERED AND ADJUDGED** this the 28th day of November, 2018.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE

1

2

3

4

5  IN THE UNITED STATES DISTRICT COURT

6  FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

| | |
|---|---|
| 8  USA, | Case No.  17-cr-00118-CRB-1 |
| 9          Plaintiff, | |
| 10       v. | **ORDER GRANTING REQUEST FOR JUDICIAL RECOMMENDATION** |
| 11  OTERO, | |
| 12          Defendant. | |

13     On September 20, 2017, Defendant Juan Antonio Otero filed a plea of guilty to four

14  counts of mail fraud. Dkt. 14. On January 11, 2018, this Court sentenced him to a term of

15  eighteen months of imprisonment and three years of supervised release. Dkt. 21. On

16  September 13, 2018, Otero filed a motion requesting that this Court recommend him for

17  placement in a Bureau of Prisons RRC/Halfway House. Dkt. 24; see 18 U.S.C.

18  § 3624(c)(1).

19     The government has filed an opposition, Dkt. 25, stating that "[w]hile the

20  government takes no position on whether the Court should recommend his placement in

21  the program, the government does note that this Court lacks jurisdiction to order his

22  placement in the program[.]" Dkt. 25 at 1. The government is correct that this Court may

23  not require the BOP to place a defendant in an RRC or Halfway House, and that Otero has

24  no right to such a placement. Mayes v. Tews, 2011 WL 1812526, at *2 (N.D. Cal. May 12,

25  2011) (quoting Rodriguez v. Smith, 541 F.3d 1180, 1185 (9th Cir. 2008)); 8 U.S.C.

26  § 3621(b); Dkt. 25. However, courts may order the BOP to consider an inmate's request,

27  Rodriguez, 541 F.3d at 1187, and district courts may issue non-binding recommendations

28  that the BOP grant such a request, United States v. Ceballos, 671 F.3d 852, 855-56 (9th

United States District Court
Northern District of California

1    Cir. 2011); <u>accord</u> <u>United States v. Ellis</u>, 2017 WL 4641489, at *1 (N.D. Cal. Oct. 17,

2    2017).

3       The government has taken no position on whether such a recommendation would be

4    prudent in this case. <u>See</u> Dkt. 25 at 1. Instead, the government argues that because Otero is

5    currently incarcerated in Mississippi, this Court lacks jurisdiction over the warden of that

6    facility, and thus over this petition. Dkt. 25. But the government's support for this

7    proposition relies on interpreting Otero's motion as a habeas petition, <u>see</u> Dkt. 25 (citing

8    <u>Hernandez v. Campbell</u>, 204 F.3d 861 (9th Cir. 2000); 28 U.S.C. § 2241). Otero does not

9    seek habeas relief; rather, he appears to seek only the type of non-binding recommendation

10    permitted under 18 U.S.C. § 3621(b)(4) (permitting the BOP to consider "any statement by

11    the court that imposed the sentence . . . recommending a type of penal or correctional

12    facility as appropriate."). As several courts have recognized, "[a] sentencing court may make

13    a recommendation that a prisoner serve a term of imprisonment in an RRC." <u>United States v.</u>

14    <u>Collins</u>, 2018 WL 1157508, at *1 (E.D. Cal. Mar. 5, 2018); <u>see also</u> <u>United States v. Sutherland</u>,

15    2018 WL 3085169, at *2 (D. Me. June 22, 2018) (listing courts that have issued orders

16    recommending release into residential reentry programs). As to that statute, the government offers

17    no jurisdictional argument. <u>See</u> Dkt. 25.

18       Moreover, § 3621 permits the BOP to consider "any statement *by the court that*

19    *imposed the sentence*," 18 U.S.C. § 3621(b)(4) (emphasis added), not the court that

20    happens to sit in the venue in which the BOP placed the defendant. As this Court

21    sentenced Otero, Dkt. 21, it may thus choose to issue this type of recommendation.

22       The government next argues that "Otero has failed to exhaust administrative

23    remedies as required under <u>Bivens</u>." Dkt. 25; <u>see</u> <u>Bivens v. Six Unknown Named Agents</u>

24    <u>of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971)). But this fails for the same reason the

25    government's jurisdictional argument fails: Otero is not bringing a <u>Bivens</u> action; he seeks

26    only a non-binding recommendation under § 3621(b)(4). Dkt. 24. And the government

27    cites no support for the proposition that a defendant must exhaust administrative remedies

28    before seeking such a recommendation. <u>See</u> Dkt. 2. Indeed, since the request is for "a

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1    statement by the court that imposed the sentence," it is unclear what type of administrative

2    remedy could afford an equivalent result. This argument, then, also fails.

3           Turning to the merits of Otero's request, the Court sees no reason to deny the

4    request, nor has the government offered one. Otero reports, and his attached

5    documentation supports, that during his incarceration he has been a "role-model inmate."

6    Dkt. 24. He also reports that he has completed "numerous classes for Re-Entry" including

7    "earning [his] GED, Political Science, Entrepreneur Opportunities, Marketing, [and] Guide

8    to Home Ownership" and has "attended United States Probation seminars for those about

9    to be released that discuss topics along with the AUSA, as well as participating in several

10   self-help, self-improvement and religious programs . . . Release Orientation Programming;

11   Transitioning to the Community, Adjusting Your Attitude, Reintegrating with Your

12   Family, Managing Your Finances, [and] Applying for a Job." Dkt. 24. In addition, he

13   reports that he is "currently enrolled in three different RRP classes, working a job

14   assignment, and participates in "self-help classes here at the [Prison] Camp, attend[s] Bible

15   Study, 12 step and Alcoholic Anonymous programming, [and] Narcotics Anonymous."

16   Dkt. 24. He states that he seeks to be placed in an RRC or Halfway House because it will

17   allow him to "work, save money, attend classes, pay [his] restitution, pay taxes, help

18   support [his] family" and "integrate back into society." Dkt. 24 at 2. In light of these

19   activities, the Court believes that Otero is well suited to placement a in Bureau of Prisons

20   RRC/Halfway House.

21          For the foregoing reasons, the Court GRANTS Otero's motion requesting a judicial

22   recommendation of placement in a Bureau of Prisons RRC/Halfway House.

23          **IT IS SO ORDERED.**

24   Dated: October 11, 2018

25                                      CHARLES R. BREYER
                                        United States District Judge

26

27

28

                                        3

---

**UNITED STATES OF AMERICA, Plaintiff, v. JOHN TURNQUIST, Defendant.**
**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA**
**2018 U.S. Dist. LEXIS 98614**
**No. 1:12-cr-000173 AWI**
**May 31, 2018, Decided**
**May 31, 2018, Filed**

---

**Counsel**          John Turnquist, Defendant, Pro se, HERLONG, CA.

For John Turnquist, Defendant: Robert Conrad Lamanuzzi, LEAD ATTORNEY, Law Offices of Robert C Lamanuzzi, Fresno, CA USA.

For U.S.A.: Melanie Leigh Alsworth, GOVT, LEAD ATTORNEY, Fresno Forfeiture Unit, United States Attorney's Office, Fresno, CA USA; Kathleen Anne Servatius, United States Attorney Fresno Office, Fresno, CA USA; Mia Anne Giacomazzi, U S Attorneys Office, Fresno, CA USA.

**Judges:** Anthony W. Ishii, Senior United States District Judge.

Opinion

**Opinion by:**          Anthony W. Ishii

Opinion


### ORDER REGARDING DEFENDANT'S PRO SE MOTION FOR A JUDICAL RECOMMENDATION FOR PLACEMENT IN A RESIDENTIAL RE-ENTRY CENTER (RRC)/HALFWAY HOUSE

On March 30, 2018, Defendant, John Turnquist ("Turnquist") filed his pro se motion "requesting a judicial recommendation concerning length of RRC/Halfway House placement". The undersigned personally received a copy of his motion on May 30, 2018. In his motion, Turnquist respectfully moves the court "to recommend that the Bureau of Prisons ("BOP") afford him a Residential Re-Entry Center ("RRC)/Halfway House placement time of twelve (12) months preceding the end of his sentence".

In support of his motion, Turnquist states as follows:

1. That on March 30, 2015, this court sentenced him to a term of one hundred and twenty (120) months imprisonment followed by a term of four (4) years of supervised release.

2. That pursuant to the **Second Chance Act** of 2007 ("SCA") the BOP may place a Defendant into an RRC/Halfway House up to twelve (12) months prior to his release date if it is determined that his placement in an RRC/Halfway House for such period would be of "sufficient duration to provide the greatest likelihood of successful reintegration into the community."

3. That the criteria that the BOP is to consider in assessing an individual applicant's eligibility for up to twelve (12) months of RRC/Halfway House placement includes: any statements made by the Court concerning the purposes that warranted a sentence to imprisonment and recommending the type of correctional facility that would be appropriate. 18 U.S.C. 3621(b)(4)(A), (B). An RRC/Halfway House is a correctional facility with superior transitional programs to help inmates rebuild their ties to the community and to their family. Any

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

recommendation by the Court is non-binding on the BOP and is purely advisory.

4. That Turnquist is currently housed at the Federal Correctional Institution Herlong, CA. His release date is February 28, 2020, and a recommendation for RRC/Halfway House placement of 12 months will not affect this release date.

5. That Title 18, United States Code, section 3582(c) provides that a "court may not modify a term of imprisonment once it has been imposed except in very limited circumstances," and he is not asking the court to modify his sentence. He is asking the court to simply recommend changing the place of incarceration of the sentence per the **Second Chance Act**.

6. That he is 36 years old, is mature and has availed himself of every opportunity available to him at FPC Sheridan to be reformed and to rejoin law abiding society with the help of a judicial recommendation at an RRC/Halfway House in his community.

7. That according to the BOP's *Revised Guidance for Residential Reentry Center(RRC) Placements*, RRC/Halfway House time decisions "are to focus on RRC placement as a mechanism to reduce recidivism." Turnquist states that his record of prior addiction and addictive behavior, the nature of his offense and his strained family relationships certainly attest to his need for such comprehensive and community based rehabilitation.

8. This his primary emotional support for successfully reintegrating into the community and avoiding relapse into drug addiction will unquestionably come from his family, and that an RRC/Halfway House placement will afford a strong opportunity for his family to reunify and to offer full support to his reintegration.

9. That his employment history has been severely restricted by his incarceration, and that a new career path will allow him to again become the sole provider for his family, thus allowing them to break the dependency on public assistance. Placement in an RRC/Halfway House will allow him to seek full time employment for supporting his family and their health and well-being.

10. That rehabilitative programming during his incarceration has been limited, and what programs are available have already been completed by him. Placement in an RRC/Halfway House would allow far more rehabilitative programs and opportunities for him to address and correct his elevated risk of recidivism.

11. That a substantial concern for him is the melanoma cancer and resulting 6 surgeries that his wife has undergone. Placement in an RRC/Halfway House will allow him to begin to take the first steps to provide for his family's well-being and needs.

12. That his past use of drugs has been detrimental to him and has affected all areas of his life. Turnquist states that he would greatly benefit from community based drug addiction aftercare in an RRC/Halfway House. Turnquist states that he has graduated from the BOP's Residential Drug Abuse Program (RDAP) where he was honored with awards for his participation.

13. That he expressed exceptional remorse and contrition regarding his commission of his offense and he accepted responsibility. Turnquist states that he has participated in multiple parenting courses and has taken many self-improvement courses, and multiple vocational training (VT) courses. Turnquist further states that he has demonstrated a remarkable leadership role by teaching other inmates positive life and career skills such a barbering, demonstrating that he is accepting responsibility and becoming a positive contributor to a law abiding society.

In addition to the above information provided by Turnquist in support of his motion, he has also provided the court with relevant supporting documentation.

DISHOT

2

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Based upon this supporting information and documentation, the court is inclined to grant Turnquist's motion and to recommend to the BOP that he be placed in an RRC/Halfway House for a period of 12 months preceding the end of his sentence. However, the court emphasizes that this is merely a recommendation to the BOP based solely on the content of Turnquist's motion. The court has conducted no independent investigation nor has the court sought or received comment from the BOP, the United States Attorney, the court's own Probation Office or any other source. The court recognizes that any determination of Turnquist's placement in an RRC/Halfway House will be independently done by the BOP pursuant to applicable law, policy and its own information and investigation of this matter.

THEREFORE, the Court recommends to the Bureau of Prisons that Turnquist be placed in an RRC/Halfway House for a period of 12 months preceding the end of his sentence in this case.

IT IS SO ORDERED.

Dated: May 31, 2018

/s/ Anthony W. Ishii

Anthony W. Ishii

Senior United States District Judge

DISHOT                                                    3

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

UNITED STATES OF AMERICA v. TIFFANY SUTHERLAND
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE
2018 U.S. Dist. LEXIS 104596
1:15-cr-00041-JAW-02
June 22, 2018, Decided
June 22, 2018, Filed

**Judges:** JOHN A. WOODCOCK, JR., UNITED STATES DISTRICT JUDGE.

Opinion

**Opinion by:** JOHN A. WOODCOCK, JR.

Opinion

## ORDER ON MOTION FOR RECOMMENDATION REGARDING LENGTH OF RRC PLACEMENT

The Court grants an inmate's request that it recommend to the Bureau of Prisons that as she nears the end of her period of federal incarceration, she be allowed to spend from nine to twelve months assigned to a residential reentry center with the caveats (1) that the Court is unaware of anything in her dealings with the Court that would significantly militate against such a recommendation, (2) that the Court assumes the accuracy of the Defendant's stated accomplishments while in prison, (3) that the BOP itself has not been represented in this motion and the Court has no information as to its position, (4) that the BOP, not the Court, has the ultimate authority to designate an inmate, and (5) that beyond the individual circumstances presented here, this order reflects this Court's generally positive view of the efficacy of residential reentry centers in bridging the gap from a lengthy period of incarceration to the greater freedom of supervised release.

## I. BACKGROUND

On July 16, 2016, the Court sentenced Tiffany Sutherland to a term of incarceration of 54 months for her part in a conspiracy to distribute and possess with intent to distribute cocaine, heroin, and 28 grams or more of cocaine base, a violation of 21 U.S.C. § 841(a)(1). *J.* (ECF No. 180). On November 30, 2017, the Court reduced her sentence to a term of incarceration of 51 months. *Am. J.* (ECF No. 198).

### A. Tiffany Sutherland's Motion

On April 23, 2018, Ms. Sutherland moved this Court to recommend to the United States Bureau of Prisons (BOP) that she receive nine to twelve months of Residential Reentry Center placement. *Mot. for Recommendation Regarding Length of RRC Placement* (ECF No. 200) (*Def.'s Mot.*). Ms. Sutherland's motion is largely a "fill-in-the-blanks" motion.1

Ms. Sutherland states that she has a current release date of February 19, 2019 and it is therefore vital that she be recommended for the reentry center as soon as possible. *Id.* at 2. She says that during her incarceration, she has maintained a clean record and has consistently worked as an orderly. *Id.* Conceding that the BOP has the ultimate authority to designate her to an RRC, she also observes that the BOP is required to consider any judicial recommendation. *Id.* She notes that she graduated from the Residential Drug Abuse Program (RDAP) on April 6, 2018 at Alderson **Federal**

DISHOT                                        1

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**Prison Camp**, but she states that she did not get a reduced sentence from her RDAP participation because of the gun enhancement. *Id.* at 4. Ms. Sutherland represents that her Unit Team is requesting that her halfway house date be fixed in September 2018. *Id.* at 3-4.

### B. The Government's Response

On May 11, 2018, the Government filed a pro forma response, taking no position on the motion. *Gov't Resp. to Def.'s Mot. for Recommendation Regarding Placement* at 1 (ECF No. 201). On May 15, 2018, the Government filed a supplemental response. *Gov't Second Resp. to Def.'s Mot. for Recommendation Regarding Placement* (ECF No. 202) (*Gov't's Second Resp.*).

The Government concurs with Ms. Sutherland that the BOP, not this Court, has the authority to determine her place of imprisonment. *Gov't's Second Resp.* at 2-3. The Government observes that the pre-release designation statute, 18 U.S.C. § 3624(c), provides that the BOP may exercise its discretion in assigning an inmate to prerelease custody and that any recommendation from this Court must be subject to the BOP's statutory discretion. *Id.* at 3. The Government points to other court decisions which have granted post-judgment motions similar to Ms. Sutherland's. *Id.* at 3-4 (citing caselaw). In the end, the Government leaves the decision as to whether to make a recommendation to the sound discretion of the Court. *Id.* at 4.

## II. DISCUSSION

The United States Supreme Court has written that Congress has given the BOP "plenary control, subject to statutory constraints, over 'the place of the prisoner's imprisonment.'" *Tapia v. United States*, 141 S. Ct. 2382, 2390 (2011) (quoting 18 U.S.C. § 3621(b)). Federal law permits a court to make a recommendation to the BOP, "[b]ut decisionmaking authority rests with the BOP." *Id.* at 2390-91. The applicable statutory provision is 18 U.S.C. § 3624(c)(1):

> [The BOP] shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility. Federal law also provides that a sentencing court may make a recommendation that a prisoner serve a term of imprisonment in a residential reentry center. 18 U.S.C. § 3621(b). But the recommendation has no binding effect. *Id.*

Some sentencing courts have issued orders recommending release into a residential reentry center. *United States v. Hoskins*, No. 3:01-cr-00266, 2018 U.S. Dist. LEXIS 56466 (M.D. Pa. Apr. 3, 2018); *United States v. Bhamani*, No. 2:10-cr-00327-TLN, 2017 UL 2992455, 2017 U.S. Dist. LEXIS 109902 (E.D. Cal. Jul. 13, 2017); *United States v. Brattin*, No. 2:13-cr-0161-JAD-CWD-1, 2016 WL 4467897, 2016 U.S. Dist. LEXIS 112222, (D. Nev. Aug. 23, 2016); *United States v. Bartels*, No. 12-cr-20072, 2016 WL 6956796, 2016 U.S. Dist. LEXIS 164056 (E.D. Mich. Nov. 29, 2016); *United States v. Baker*, No. 3:01-cr-94-01-MHT, 2013 WL 355867, 2013 U.S. Dist. LEXIS 11418 (M.D. Ala. Jan. 29, 2013); *United States v. Qadri*, No. CR-06-00469-LEK, 2017 WL 1011663, 2017 U.S. Dist. LEXIS 38716 (D. Haw. Mar. 15, 2017). These courts have typically emphasized the defendant's post-sentencing rehabilitation, the criminal record, and any recommendations from BOP personnel.

Other sentencing courts have denied similar motions. *United States v. Perry*. No. 2:13-cr-0049-TLN, 2017 U.S. Dist. LEXIS 65226 (E.D. Cal. Apr. 27, 2017); *United States v. Anderson*, No. 10-20437-CR-JEM, 2012 WL 5530271, 2012 U.S. Dist. LEXIS 195841 (S.D. Fla. Aug. 1, 2012); *United States v. Landers*, No. 6:09-cr-0893-JMC, 2013 WL 5530271, 2013 U.S. Dist. LEXIS 144450 (D.S.C. Oct. 7, 2013). Often the denials are based on the sentencing court's deference to the BOP's superior legal and factual position to make this decision, on a lack of corroborating information, and

DISHOT

2

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

on the timing of the motion, such as a motion made too early in an inmate's sentence to predict his status at the end of incarceration. *See e.g., United States v. Hoskins*, No. 3:01-cr-00266, 2018 U.S. Dist. LEXIS 14474 at *6 (M.D. Pa. Jan. 30, 2018). On November 18, 2011, Judge Hornby of this District denied a similar request, concluding that there was "no reason to distinguish [the defendant] from other inmates whom the [BOP] must assign in accordance with the criteria Congress has given it." *United States v. Smith*, No. 2:10-cr-00154-JDL, *Order on Def.'s Mot. for Judicial Recommendation to BOP* at 1 (ECF No. 34).

In this case, the Court makes four observations. First, although Ms. Sutherland was a Criminal History Category IV at the time of her sentencing, her criminal record reflected her long struggle with addiction. Also, even though she received a firearms enhancement at the time of her sentencing, there was no evidence of her actual use of the firearm. Other than these two factors, there is nothing in Ms. Sutherland's background or crime that would contradict her assertion that she would benefit from a longer term at a residential reentry center. Her history of addiction suggests that she would benefit from an interim period where drug abuse treatment would be available and where there will be constraints on her freedom.

Second, consistent with congressional policy expressed in the Second Chance Act, the Court is of the view that inmates, particularly those like Ms. Sutherland who have served a significant term in federal custody, almost always benefit from placement in a residential reentry center in order to make a smooth transition from incarceration to supervised release.

Third, the Court sentenced Ms. Sutherland on July 11, 2016 and it has not received any further information from the BOP about how she has fared while in federal custody. The Court assumes the truth of what Ms. Sutherland has represented she has done while in prison and commends her, but the BOP has not explained what its position is regarding her release to a residential reentry center. It seems obvious that the BOP, which has maintained custody of Ms. Sutherland over the last two years, is in a much better position to evaluate her request than this Court, which last dealt with Ms. Sutherland about two years ago.

Finally the Court is unaware of whether a residential reentry center has a place for Ms. Sutherland, whether the Court's recommendation would displace another equally deserving inmate waiting in line for placement, and the BOP's range of other considerations, which necessarily involve the allocation of limited resources. Thus for reasons both statutory and practical, the Court expressly defers to the BOP in responding to the Court's recommendation.

## III. CONCLUSION

The Court GRANTS Tiffany Sutherland's Motion for Recommendation Regarding Length of RRC Placement (ECF No. 200) and recommends to the BOP that, if possible, Tiffany Sutherland be allowed to serve nine to twelve months in a residential reentry center, with the express understanding that this order reflects the Court's positive view of the benefits of residential reentry centers in general, that there are no reasons in her dealings directly with the Court that she should not be released as early as possible to a residential reentry center, that the order is a recommendation to the BOP, which the BOP may consider along with other factors, and that the BOP, which has had custody of Ms. Sutherland since July 2016, is in a better position to make a final determination on the issue.

SO ORDERED.

/s/ John A. Woodcock, Jr.

JOHN A. WOODCOCK, JR.

DISHOT                                                                        3

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

UNITED STATES DISTRICT JUDGE

Dated this 22nd day of June, 2018

**Footnotes**

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

---

**UNITED STATES OF AMERICA, Plaintiff, v. AMBER COLLINS, Defendant.**
**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA**
2018 U.S. Dist. LEXIS 35699
No. 2:15-cr-00176-7-TLN
March 5, 2018, Decided
March 5, 2018, Filed

---

**Counsel**                    For Boone B. Khoonsrivong, Defendant: David Delmer Fischer, LEAD
ATTORNEY, Law Offices of David D. Fischer, APC, Rocklin, CA.
For Thongchone Vongdeng, Defendant: John Richard Manning,
LEAD ATTORNEY, Law Office of John R. Manning, Sacramento, CA.
For Daisy Sysengrat, Defendant: Steven B. Plesser, LEAD
ATTORNEY, Reichel, Plesser, L.l.p., Sacramento, CA.
For USA, Plaintiff: Andre M. Espinosa, LEAD ATTORNEY, U.S.
Attorney's Office, Eastern District of California, Sacramento, CA; Rosanne Rust, GOVT,
LEAD ATTORNEY, US Attorney's Office, Sacramento, CA.

**Judges:** Troy L. Nunley, United States District Judge.

**Opinion**

**Opinion by:**            Troy L. Nunley

**Opinion**

## ORDER GRANTING DEFENDANT'S MOTION FOR <u>JUDICIAL RECOMMENDATION</u> FOR TWELVE MONTHS COMMUNITY CORRECTIONAL FACILITY PLACEMENT

This matter is before the Court pursuant to Defendant Amber Collin's ("Defendant") Motion for <u>Judicial Recommendation</u> for Twelve Months of Community Correctional Facility Placement. (ECF No. 317.) Defendant's motion seeks a <u>judicial recommendation</u> to the Federal Bureau of Prisons ("BOP") for placement in a community correctional facility (halfway house or home detention) for 12 months preceding her release from confinement. (ECF No. 317 at 1.) The Government has filed a statement of non-opposition. (ECF No. 318.) The Court has carefully considered Defendant's arguments. For the reasons set forth below, Defendant's Motion for <u>Judicial Recommendation</u>, (ECF No. 317), is hereby GRANTED.

### I. Procedural History

On April 27, 2017, Defendant pled guilty to Count 1 of the Indictment, charging Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. 1029(b)(2). (ECF No. 159.) On March 1, 2018, the undersigned sentenced Defendant to a term of 30 months in prison followed by three years of supervised release. (ECF No. 316.) Following sentencing, Defendant submitted this motion for <u>judicial recommendation</u> for the maximum 12-month placement in a community correctional facility (halfway house or home detention). (ECF No. 317 at 1-2.)

### II. Legal Standard

"Two statutory provisions govern the BOP's authority to place inmates in its custody in RRCs: 18

DISHOT                                          1

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

U.S.C. §§ 3621(b) and 3624(c)." *Sacora v. Thomas*, 628 F.3d 1059, 1062 (9th Cir. 2010). Section 3621(b) "governs the BOP's authority in cases where a prisoner who has more than a year left to serve his or her prison sentence requests a transfer to a [RRC]." *Id.* Section 3624(c)(1), as amended by the Second Chance Act of 2007, provides that the BOP

> shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.18 U.S.C. § 3624(c)(1). A sentencing court may make a recommendation that a prisoner serve a term of imprisonment in an RRC. 18 U.S.C. § 3621(b). A **judicial recommendation** is one factor that the BOP considers in determining a prisoner's placement, but a recommendation has "no binding effect" on the BOP to determine or change a prisoner's placement. 18 U.S.C. § 3621(b).

### III. Analysis

Defendant states early release into a halfway house will enable her "to return to work to support her family while still residing in a secure setting, and to have more contact with her children." (ECF No. 317 at 2.) Defendant argues "[s]he has demonstrated extraordinary rehabilitation, and does not pose a threat to public safety." (ECF No. 317 at 2.) Defendant argues the progress she has made toward rehabilitation demonstrate that she is "an excellent candidate for early release into a halfway house." (ECF No. 317 at 2.) The government filed a statement stating it does not oppose Defendant's request. (ECF No. 318 at 2.)

Accordingly, Defendant's Motion for **Judicial Recommendation**, (ECF No. 317), is hereby GRANTED, and the Court recommends that BOP place Defendant in an appropriate pre-release placement for the maximum time for which she is eligible, not to exceed 12 months.

IT IS SO ORDERED.

Dated: March 5, 2018

/s/ Troy L. Nunley

Troy L. Nunley

United States District Judge

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

2. RRC Placement

18 U.S.C. § 3624(c)(1)(effective April 9, 2008), as amended by the **Second Chance Act** of 2007, governs RRC placements. The statute provides, in pertinent part:

(c) Prerelease custody.-

(1) In general.--The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

(2) Home confinement authority.--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

(3) Assistance.--The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during prerelease custody under this subsection.

(4) No limitations.--Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.

(5) Reporting ...

(6) Issuance of regulations.--The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the **Second Chance Act** of 2007, which shall ensure that placement in a community correctional facility by the Bureau of Prisons is-

(A) conducted in a manner consistent with section 3621(b) of this title;

(B) determined on an individual basis; and

(C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

The statutory factors the BOP must consider in making its RRC placement decisions are found in 18 U.S.C. § 3621(b):

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence-

(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

(B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

On May 24, 2013, the BOP issued its most recent RRC guidance. (Macavoy Decl., Attachment 4, ECF No. 4-1 at 30-37.) The memorandum addressed the need to focus BOP's limited RRC spaces

DISHOT                                                                1

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

on inmates with the greatest needs and the highest risk of recidivism. (Id. at 30.) According to the memorandum, "RRM staff will not unilaterally deny RRC referrals or reduce placement dates unless there are no available RRC beds within a reasonable distance for the specific referral date/length." (Macavoy Decl., Attachment 7 at 35.) Further, "if RRM staff determines a modification to a referral is needed or that other placement options are available . . . the change must be approved by the Warden." (Id. at 35.)

The memorandum also discusses inmate eligibility for direct home confinement, as outlined in BOP Program Statement 7320.01 and 18 U.S.C. 3624(c)(1). (Macavoy Decl., Attachment 7, ECF No. 4-1 at 34.) Basic criteria for home confinement includes:

1) Appropriate release residence (e.g., positive environment free from criminal/drug use activity and a reasonable distance from the RRC, typically less than 100 miles;

2) No recent major disciplinary issues. This should be based on sound correctional judgment;

3) Any medical or mental health needs that can be met in the community and funded by the inmate or other documented resources, and

4) Secured employment is not required for placement on home confinement.(Id.) Judicial review of the BOP's RRC placement decision is limited to whether the BOP abused its discretion. Vasquez v. Strada, 684 F.3d 431, 434 (3d Cir. 2012).

DISHOT                                                        2

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

b.  **Residential Reentry Center (RRC) Placement**.  Each Warden is strongly encouraged to approve inmates who successfully complete the <u>**non-residential drug abuse program**</u> for the maximum period of RRC placement.   On occasion, administrative factors (e.g., bedspace limitations at a RRC) or community safety concerns (i.e., exclusionary criteria) occur that require consideration for a RRC placement of more or less than the recommended number of days.  When this occurs, the goal for both the Warden and Community Corrections Manager (CCM) is to seek the best possible placement for the RRC period without negatively impacting bedspace limitations in contract facilities or jeopardizing community safety.

proṭ

1

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

# FCC Yazoo City, MS (Min/Low/Med/USP)
# Release Orientation Program (ROP/RPP) Schedu

The standardized curriculum includes the six required categories of RPP classes:

1. Health and Nutrition
2. Employment
3. Personal Finance/Consumer Skills
4. Information/Community Resources
5. Release Requirements and Procedures
6. Personal Growth and Development.

| TIME | Day 1 | Day 2 | |
|------|-------|-------|---|
| 7:30 AM – 8:30 AM | Transitioning to the Community – An Introduction<br>Case Management Coordinator | Obtaining Personal Identification<br>Reentry/Unit Management<br>Locating Community Resources<br>Reentry | Succeeding with<br>Jackson, MS USP |
| 8:30 AM – 9:30 AM | Adjusting Your Attitude<br>Psychology Department | Obtaining Healthcare Coverage<br>Health Services | |
| 9:30 AM – 10:30 AM | Building a Support Network<br>Unit Management | Identifying Legal Issues<br>Legal/Correctional Systems Department | Understanding I<br>Case Manageme |
| **Mainline** | | | |
| 12:30 PM – 1:30 PM | Reintegrating with Your Family<br>Education Department | Applying for a Job<br>Education Department/Reentry Department | Maintaining Goo<br>Psychology Depa |
| 1:30 PM – 2:30 PM | Using Your Leisure Time Wisely<br>Recreation Department | | Maintaining Goo<br>Recreation Depa |
| 2:30 PM – 3:30 PM | Managing Your Finances<br>Reentry | Living in the Community – RRCs and Home Confinement<br><br>Local RRM/Community Corrections Staff | Contending with<br>Psychology Depa |



# Federal Correctional Complex
# Yazoo City, Mississippi

## Volunteer Appreciation Certificate

### Hermann Diehl
**April 26, 2018**

In appreciation for your participation in the Volunteer Appreciation Program at FCC

L. Reams, Reentry Affairs Coordinator

C. Rivers, W

# Certificate of Achieven

## This certificate is hereby awarded

### Hermann Diehl

for his participation in the Mock Job Fair
at FCC Yazoo City, Mississippi, on December

E. Foster
Mock Job Fair Coordina

Case 9:11-cr-80100-KAM Document 1341 Entered on FLSD Docket 03/04/2019 Page 42 of 55

# CERTIFICATE OF APPRECIATION

## HERMANN DIEHL

IS HEREBY AWARDED THIS CERTIFICATE OF APPRECIATION
ASSISTANCE AND DEDICATION WITH THE GED PROGRAM
FCC YAZOO CITY, MISSISSIPPI.

JUNE 26, 2018





E. Foster, Graduation Coordin

# Certificate of Complet[ion]

## This certificate is hereby awarded

# HERMANN DIEHL

for

## BRAIN HEALTH

FCC Yazoo City Satellite Camp, on January 16,

A. Gentry, Camp Administrator

# Certificate of Complet

## Hermann Diehl

has successfully completed the Adult Con
Education Course Work at

FCC Yazoo City, Mississippi for

## HEALTH AND NUTRITION

Awarded this 15th day of May, 2018

E. Foster, ACE Coor



# Certificate of Completion

## HERMANN DIEHL

### HAS SUCCESSFULLY COMPLETED THE COURSE WORK

## PARENTING

### AT FCC YAZOO CITY, MISSISSIPPI

### FEBRUARY 6, 2019

# Certificate of Completion

*Hermann Diehl*

has successfully completed the Adult Continuing
Education Course Work at

FCC Yazoo City, Mississippi for

## LANGUAGE II

Awarded this 18th day of September, 2018

E. Foster, ACE Coordinator

# Certificate of Complet

## *Hermann Diehl*

has successfully completed the Adult Con

Education Course Work at

FCC Yazoo City, Mississippi for

## WORLD GEOGRAPHY

Awarded this 8th day of December, 20

E. Foster, ACE Coor

# CERTIFICATE OF COMPLET



This certificate is awarded to

# HERMANN DIEHL

for

# YOUR MONEY, YOUR GOALS

A. Gentry
**Camp Administrator**

<span>January</span>
Date

# Certificate of Complet

## *Hermann Diehl*

has successfully completed the Adult Con

Education Course Work at

FCC Yazoo City, Mississippi for

## POLITICAL SCIENCE

Awarded this 18th day of July, 201

E. Foster, ACE Coor

# Certificate of Complet

## Hermann Diehl

has successfully completed the Adult Con
Education Course Work at

FCC Yazoo City, Mississippi for

## LANGUAGE I

Awarded this 17th day of July, 201

E. Foster, ACE Coor

# Certificate of Complet

## Herman Diehl

has successfully completed the Adult Con
Education Course Work at

FCC Yazoo City, Mississippi for

### AMERICAN HISTORY

Awarded this 9th day of March, 201

E. Foster, ACE Coor

# *Certificate of Accomplishme*

*Awarded to:*

## *H. DIEHL*

*For his Dedication in Completing the*
*"Yoga Class"*
*At FCC Yazoo- Camp*
*Awarded Dec-March 2017*

*Recreation Specialist/P. Johnson*

# CERTIFICATE OF COMPLETION

### awarded to:

## H. DIEHL

## For his Participation and Completion
## In The "YOGA I" CLASS

## At FCC Yazoo City-CAMP

## Awarded This Day:
## APRIL 5, 2017

### REC SPECIALIST/ P. JOHNSON

# Federal Correctional Complex
## Yazoo City, Mississippi

## Volunteer Appreciation Certificate

*Herman Diehl*

In appreciation for your participation in the Volunteer Appreciation Program at FCC Yaz...

Celebrating Service!

| L. Reams | P. Edwards | T. |
| --- | --- | --- |
| Low/Camp Reentry Coordinator | Medium Reentry Coordinator | USP Ree... |

⇔03847-104⇔

Hermann Diehl
C/O Federal Correctional Complex
Post Office Box 5000
Yazoo CITY, MS 39194
United States



7017 0660 0000 3912 2136



⇔03847-104⇔
Honorable Kenneth Marra
Court Rm# 4, Chamb. 316
701 Clematis ST
Paul Rogers Federal Bldg
WEST PALM BCH, FL 33401
United States